**FILED**

at _____ O'clock & _____ min _____ M

## UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF SOUTH CAROLINA

AUG 28 2007

United States Bankruptcy Court
Columbia, South Carolina (42)

| IN RE: | C/A No. 07-01846-JW |
| --- | --- |
| Glenda Kay Matthews, | Chapter 13 |
| Debtor(s). | ORDER |

**ENTERED**

AUG 28 2007

**R.B.S.**

This matter comes before the Court for confirmation of Glenda Kay Matthews' ("Debtor") chapter 13 plan. South Carolina Federal Credit Union ("Credit Union") objects to confirmation on grounds that Debtor's chapter 13 plan impermissibly values its purchase money security interest in two automobiles. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[1]

### FINDINGS OF FACT

1. On October 12, 2005, the Credit Union loaned $17,883.00 to Debtor for the purchase of a 2005 Chrysler Sebring (the "Sebring"). Debtor's agreement to repay the Credit Union for the Sebring is memorialized by a Motor Vehicle Purchase Agreement and Disclosure (the "Sebring Note"). The Sebring Note grants the Credit Union a security interest in the Sebring, which interest was perfected by the Credit Union having its security interest reflected on the Sebring's certificate of title.

2. On November 30, 2005, the Credit Union loaned $20,836.00 to Debtor and her mother, Glenda Jacobs, for the purchase of a 2005 Chrysler Pacifica (the "Pacifica"). Debtor's agreement to repay the Credit Union for the Pacifica is memorialized by a Motor Vehicle Purchase

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.

Agreement and Disclosure (the "Pacifica Note"). The Pacifica Note grants the Credit Union a security interest in the Pacifica which interest was perfected by the Credit Union having its security interest reflected on the Pacifica's certificate of title. Debtor and her mother are jointly listed as owners of the Pacifica on the Pacifica's certificate of title.

3. The Sebring Note and the Pacifica Note each provide for the following:

   a. that the Credit Union will allocate payments first to the accrued finance charges and then to the amount financed under those respective notes;

   b. that the Credit Union will return the certificates of title for each vehicle when Debtor repays the amount borrowed under those respective notes;

   c. that "[t]his security agreement shall include and cover future advances or other indebtedness that you may owe us or we may elect to make to you during the continued existence of this agreement;"

   d. that Debtor is giving the Credit Union "a security interest in the goods or property being purchased and all shares now or hereafter on deposit with the creditor named above;" and

   e. that the Credit Union may waive any right under those respective notes.

4. Debtor commenced this case on April 5, 2007 by filing a petition under chapter 13 of the Bankruptcy Code.

5. Debtor's indebtedness to the Credit Union under the Sebring Note and the Pacifica Note was incurred within 910 days of her petition date.

6. As of the date of the petition, Debtor was obligated on other debts to the Credit Union. On April 19, 2007, the Credit Union filed the following proofs of claim:

   a. an unsecured claim in the amount of $2,799.29 for a signature loan obtained by Debtor on September 29, 2005;

  b. an unsecured claim in the amount of $10,524.42 for a credit card obtained by Debtor on September 1, 2003;

  c. an unsecured claim in the amount of $236.24 for an over-withdrawal from Debtor's checking account;

  d. a secured claim in the amount of $14,413.19 for the Sebring; and

  e. a secured claim in the amount of $18,695.90 for the Pacifica.

7. According to the Credit Union's proofs of claim, the debts owed by Debtor are each segregated into separate accounts.

8. Debtor filed her chapter 13 plan (the "Plan") on April 5, 2007. The Plan proposes to bifurcate Credit Union's security interest in the Sebring and the Pacifica by paying the Credit Union $10,000.00 as a secured claim for the Sebring and $15,000.00 as a secured claim for the Pacifica. The remaining balances on these debts would be treated as unsecured claims.

9. The Credit Union filed a timely objection to confirmation of Debtor's Plan. The Credit Union asserts that the hanging paragraph of 11 U.S.C. § 1325(a) prohibits Debtor from valuing its security interests because the security interests are purchase money and the debts were incurred within 910 days of the petition date.

10. Debtor argues that the cross-collateralization and the future advance clauses in the Sebring Note and the Pacifica Note alter the purchase money nature of the Credit Union's security interests in her vehicles. Debtor also testified that the Pacifica was purchased for the benefit of Debtor's mother and therefore that vehicle is not subject to the hanging paragraph of 11 U.S.C. § 1325(a).

3

## **CONCLUSIONS OF LAW**

**I.    11 U.S.C. § 1325(a)(*) Prevents the Bifurcation of the Claims of Certain Creditors.**

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Reform Act") amended 11 U.S.C. § 1325. As amended, the final paragraph of 11 U.S.C. § 1325(a) now states:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing....

11 U.S.C. § 1325(a)(*).

This hanging paragraph of 11 U.S.C. § 1325(a) prevents the bifurcation of a creditor's secured claim that fits within the protection offered by this section. See In re Turner, 349 B.R. 437, 441-442 (Bankr. D.S.C. 2006). This section is intended to benefit those creditors that hold a purchase money security interest. See id. at 442. For debts secured by motor vehicles, the section is limited to motor vehicles acquired for the personal use of the Debtor. The issues raised under the facts of this case involve issues of first impression in this District as the Court must determine whether the Credit Union holds a qualifying purchase money security interest in light of certain cross-collateralization and future advance clauses[2] and, if so, whether the Pacifica was acquired for the personal use of Debtor.

---

[2]    Following the enactment of the Reform Act, bankruptcy courts in various jurisdictions have had the opportunity to address whether a creditor holds a purchase money security interest, under their state's version of the Uniform Commercial Code, in order to determine whether the creditor's claim may be bifurcated in a chapter 13 plan. The majority of these cases have dealt with the financing of negative equity for a trade-in vehicle or the financing of a vehicle warranty or insurance. See In re Price, 363 B.R. 734, 741-742 (Bankr. E.D.N.C. 2007) (holding that the financing of insurance and negative equity resulted in a non-purchase money security interest); In re Pajot, C/A No. 06-31446-DOT, ___ B.R. ___, 2007 WL 2109892 (Bankr. E.D. Va. Jul. 17, 2007) (same). But see, In re Graupner, 356 B.R. 907, 923 (Bankr. M.D. Ga. 2006) (holding under Georgia law that the financing of negative equity did not destroy

## II. The Credit Union Holds Purchase Money Security Interests Under South Carolina Law.

Whether the Credit Union's security interests are purchase money security interests is a matter of state law. See Rosen v. Associates Financial Services Co., 18 B.R. 723, 724 (Bankr. D.S.C. 1982) (aff'd 17 B.R. 436 (D.S.C. 1982)); In re Pajot, C/A No. 06-31446-DOT, slip op., 2007 WL 2109892, * 5 (Bankr. E.D. Va. Jul. 17, 2007) (noting that the Bankruptcy Code does not define "purchase money" and therefore using Virginia law to determine if the creditor's security interest was purchase money). South Carolina adopted the revised version of Article 9 in 2001, which is codified at S.C. Code Ann. § 36-9-101 *et seq.* (West 2003) (hereinafter the "U.C.C."). The U.C.C. provides that "[a] security interest in goods is a purchase money security interest: (1) to the extent that the goods are purchase money collateral with respect to that security interest." See S.C. Code Ann. § 36-9-103(b)(1) (West 2003). The term "goods" is defined as "all things that are moveable when a security interest attaches," which is a term that includes Debtor's vehicles. See id. § 36-9-102(44). "Purchase money collateral" refers to goods that secure "a purchase money obligation incurred with respect to that collateral." See id. § 36-9-103(a)(1). A "purchase money obligation" is in turn defined as "an obligation of an obligor ... for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." See id. § 36-9-103(a)(2). Thus, a security interest is purchase money if a debtor incurs debt to obtain certain goods and the creditor lends money to the debtor to enable the debtor to obtain those goods.

Under the facts of this case, it appears that the Credit Union's security interests fit within the criteria of purchase money security interests. For the following reasons, the purchase money nature

---

the purchase money nature of the loan); In re Johnson, 337 B.R. 269, 272-273 (Bankr. M.D.N.C. 2006) (holding that the financing of a warranty may be included in a purchase money security interest).

5

does not appear destroyed by the mere presence of certain contractual clauses.[3] First, there is no evidence in the record that the Credit Union actually extended its security interests in Debtor's vehicles to secure Debtor's pre-existing and subsequent debts with the Credit Union. It also does not appear that the Credit Union exercised the cross-collateralization or future advance clauses.[4] To the contrary, the claims filed by the Credit Union each indicate that the Credit Union did not assert that Debtor's other debts were secured by Debtor's vehicles. See In re Delta Resources, Inc., 162 B.R. 562, 571-572 (Bankr. N.D. Ala. 1993) (holding a creditor invoked a cross-collateralization provision by filing proofs of claim indicating that non-purchase money debt was secured with purchase money goods). Therefore it appears that the interests continue to qualify as purchase money security interests under South Carolina law. See In re Hughes, 230 B.R. 213, 223-224 (Bankr. M.D. Ga. 1998) (discussing events that would constitute the exercise of a cross-

---

[3] Other courts have examined the issue of whether a security interest can lose its purchase money nature under two theories- the "transformation rule" and the "dual status rule." See Sears, Roebuck & Co. v. Nelson (In re Nelson), C/A No. 7:90-1942-3-GRA, slip op. at 7 (D.S.C. Jan. 25, 1991) (explaining the difference between the dual status rule and the transformation rule). Under the dual status rule, a security interest retains its purchase money nature regardless of certain events such as refinancing or other financial accommodations made for the debtor. See McAllister, 267 B.R. 614, 620-621 (Bankr. N.D. Iowa 2001). Under the transformation rule, the refinancing or cross-collateralization of a security interest transforms the security interest into a non-purchase money security interest. See Borg-Warner Acceptance Corp. v. Tascosa Nat'l Bank, 784 S.W.2d 129, 134 (Tex. Ct. App. 1990). The dual status rule has been found to be applicable in instances where there is an allocation of the payments, by contract or statute, that enables the court to determine how much of debt is purchase money and where there is a release of the purchase money security interest following the payment of such debt. See In re Gibson, 16 B.R. 257, 268-269 (Bankr. D. Kan. 1981). The leading commentators on the U.C.C. have endorsed the dual status rule as the correct approach. See JAMES J. WHITE & ROBERT S. SUMMERS, Uniform Commercial Code Practitioner Treatise Series, § 33-5 at 330 (4th ed. 1995).

This Court has not formally adopted a particular rule. However, within the context of lien avoidance under 11 U.S.C. § 522(f), this Court and the District Court have found that creditors lack a purchase money security interest in collateral when the original purchase money obligation is refinanced. See Nelson, slip op. at 7; In re Mosley, C/A No. 96-71639-W, slip op., 1996 WL 33340788 (Bankr. D.S.C. May 15, 1996); Rosen, 18 B.R. at 724. In K & P Logging, the Court refused to apply the transformation rule to a dispute between two secured creditors in a commercial transaction notwithstanding one creditor's cross collateralization clause in its security agreement. See Bank of America, N.A. v. Case Credit Corp. (In re K&P Logging, Inc.), 272 B.R. 867, 878-879 (Bankr. D.S.C. 2001). Within the commercial context, it is now clear from the revisions to the U.C.C. that the dual status rule is the correct approach as the revised U.C.C. now expressly provides that a security interest does not lose its purchase money status even if the collateral secures an obligation that is not a purchase money obligation or if the debt is renewed or refinanced. See id. at 879; S.C. Code Ann. § 36-9-103(f) and Official Comment 7 (adopting the dual status rule). However, in consumer transactions, the U.C.C. still leaves to the courts to determine whether to apply the transformation or dual status rule. See S.C. Code Ann. § 36-9-103(h) and Official Comment 8.

[4] At oral argument, the parties focused on the cross-collateralizations clauses rather than the future advance clauses. Rather than determine the argument was abandoned at this time, it appears, in this case, the result of this Order does not change regardless of which of these clauses Debtor is relying on to eliminate the protection due purchase money security interests under 11 U.S.C. § 1325(a)(*).

6

collateralization clause). Furthermore, the Credit Union's course of conduct indicates that it may have exercised its right to waive whatever right it had to secure Debtor's other debts with the Credit Union with the vehicles. See Dooley v. Weil (In re Garfinkle), 672 F.2d 1340, 1347 (11th Cir. 1982) (holding a creditor may waive its right to a security interest); In re Workman, C/A No. 06-04513-W, slip op., ___ B.R. ___, 2007 WL 2298320 (Bankr. D.S.C. Jul. 31, 2007).

Second, it appears that the Credit Union segregated each of Debtor's accounts and provided a clear method for allocating Debtor's payments in her contracts with the Credit Union. Under each agreement, Debtor's payments are applied to the debt incurred only under that agreement and not to Debtor's other debts with the Credit Union. Through segregating Debtor's accounts and providing for an allocation of Debtor's payments, the Court and other parties can readily determine the remaining debt Debtor incurred to purchase each vehicle and thereby identify the same as a purchase money obligation under the U.C.C.[5] See Southtrust Bank v. Borg-Warner Acceptance Corp., 760 F.2d 1240, 1243 (11th Cir. 1985) (holding that "[u]nless a lender contractually provides some method for determining the extent to which each item of collateral secures its purchase money, it effectively gives up its purchase money status."); John Deere Co. v. Production Credit Ass'n, 686 S.W.2d 904, 907 (Tenn. Ct. App. 1984) (finding a creditor retained a purchase money security interest, notwithstanding a future advance and after-acquired property clause, where the court could determine the amount of the debt that was purchase money).

Third, the security agreements do not allow the Credit Union to retain its security interest in a vehicle once Debtor has paid for the purchase price of that vehicle, notwithstanding Debtor's other debts with the Credit Union. By providing for this release of security, the Credit Union has provided for a sufficient method for it to retain its purchase money security interest in Debtor's vehicles since titles to the vehicles are ultimately not encumbered beyond the purchase price for

---

[5] The Credit Union's attorney also proffered that Debtor's accounts are separated not only in name but also have separate payment dates and payment amounts.

each vehicle. See Delta Resources, 162 B.R. at 570 (noting that a similar provision provides a sufficient mechanism by which a purchase money lender can protect itself); In re Staley, 426 F.Supp. 437, 438 (M.D. Ga. 1977) (refusing to apply the transformation rule where an agreement provided that the security interest collateral would be released once the purchase price was paid).

Finally, the policy considerations expressed by the District Court in In re Nelson are not applicable in this case.[6] There is no evidence of over-reaching by the Credit Union. The Credit Union has not sought to encumber the vehicles with debt beyond the purchase price of each vehicle and, therefore, it would not seem appropriate to apply the transformation rule in this case. See John Deere, 686 S.W.2d at 907 (finding a creditor did not lose a purchase money security interest since it did not seek to extend such interest beyond the collateral). Moreover, tolerance of cross-collateralization provisions carries out the purpose of the U.C.C. to give special priority to purchase money lenders. See Pristas v. Landaus of Plymouth, Inc., 742 F.2d 797, 801 (3rd Cir. 1984). This U.C.C. policy consideration applies with equal weight to revised 11 U.S.C. § 1325(a)(*) where Congress has afforded purchase money lenders special status.[7] See Turner, 349 B.R. 441-442.

Therefore, based on the foregoing, the Court finds that the presence of cross-collateralization clauses and, though not argued, the future advance clauses in Debtor's agreements with the Credit Union does not deprive the Credit Union of a purchase money security interest or the protection of 11 U.S.C. § 1325(a)(*).

### III. "Acquired for the Personal Use of the Debtor" is Based Upon the Totality of the Circumstances

Having concluded that the Credit Union holds a purchase money security interest, the Court must next consider whether the Pacifica was acquired for Debtor's "personal use." "Personal use"

---

[6] See Sears, Roebuck & Co. v. Nelson (In re Nelson), C/A No. 7:90-1942-3-GRA, slip op. at 7 (D.S.C. Jan. 25, 1991) (holding "[t]he policy underlying this rule is to prevent over-reaching creditors from retaining title to all items covered under the consolidated contract until the last item purchased is paid for.").

[7] The Court recognizes that the policy considerations of providing special treatment to certain secured creditors pursuant to 11 U.S.C. § 1325(a)(*) do not necessarily coincide with the policy considerations of providing the debtor with a fresh start under 11 U.S.C. § 522(f); however, it is the province of Congress to make law.

is not a term defined by the Bankruptcy Code. Following the passage of the Reform Act, courts have developed various tests to determine whether a vehicle was acquired for the personal use of the debtor. Some courts review Internal Revenue guidelines to determine "personal use." See In re White, 352 B.R. 633 (Bankr. E.D. La. 2006). Other courts determine "personal use" based upon the totality of the circumstances but find that a vehicle is not acquired for personal use if it allows the debtor to make a "significant contribution" to the family income. See In re Martinez, 363 B.R. 525, 527 (Bankr. S.D. Tex. 2007); In re Hill, 352 B.R. 69 (Bankr. W.D. La. 2006). Finally, other courts have reviewed the totality of the circumstances and found a vehicle was acquired for personal use, regardless of any incidental benefits to family income, if a debtor's personal use is "significant and material." See In re Solis, 356 B.R. 398, 409 (Bankr. S.D. Tex. 2006); In re Phillips, 362 B.R. 284, 305 (Bankr. E.D. Va. 2007).

Considering these approaches, this Court concludes that the totality of the circumstances as reflected in Solis is the best approach.[8] See Solis, 356 B.R. at 410 (setting forth some guidelines for determining personal use but stating that it would consider all facts and circumstances to determine whether a vehicle was acquired with the intent of providing personal benefits to the debtor). A true totality of the circumstances test is consistent with the Fourth Circuit's approach of rejecting rigid tests for other terms in the Bankruptcy Code that are not self-defining and deserve consideration on a case-by-case basis. See Deans v. O'Donnell (In re Deans), 692 F.2d 968, 971-972 (4th Cir. 1982) (rejecting the rigid test of "substantial repayment" to determine "good faith" and examining the totality of the circumstances); In re Green, 934 F.2d 568, 572-573 (4th Cir. 1991) (rejecting a *per se*

---

[8] As set forth in Johnson, it is unlikely that Congress intended the Court to make reference to Internal Revenue guidelines in determining personal use since Congress specifically employed reference to such guidelines in other provisions of the Bankruptcy Code. See In re Johnson, 350 B.R. 712, 715 (Bankr. W.D. La. 2006). The "significant contribution" test adopted in Hill and by other courts, though it purports to consider the totality of the circumstances, is in fact a bright-line test that, as a threshold matter, does not take into account that vehicle use is often blended between use that is personal and non-personal and may not accurately determine a debtor's intent at the time of purchase. See Solis, 356 B.R. at 408-409.

9

rule for determining whether a case should be dismissed for "substantial abuse" in favor of a totality of the circumstances test).

### A. Defining Personal Use

Debtor argues and the Court agrees that "personal use" is determined at the time the vehicle is purchased and not at some later date. See In re Lorenz, C/A No. 06-71881-A, ___ B.R. ___, 2007 WL 1189608 (Bankr. E.D. Va. Apr. 19, 2007) (noting it is universally accepted that the acquisition date is the relevant date to determine "personal use"). Courts construing 11 U.S.C. § 1325(a)(*) have found that use is considered personal when such use "satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral obligations." See Solis, 356 at 410.

### B. Totality of the Circumstances Test

Intent, at the time of purchase, is the touchstone for determining if a vehicle was purchased for personal use. See Solis, 356 B.R. at 409; In re LaDeaux, C/A No. 07-51004, ___ B.R. ___, 2007 WL 2163088 (Bankr. S.D. Ohio Jul. 26, 2007). Considering the cases on the issue and the facts in this case, this Court believes that the following non-exclusive list of factors and evidence should be weighed in determining whether Debtor intended to acquire the vehicle for personal use:

1) testimony from the debtor about intended use;[9]

2) the debtor's actual personal use of the vehicle;[10] and

3) any designation of personal use provided by the parties' contract.[11]

---

[9] See In re Lorenz, 2007 WL 1189608, *9.
[10] See LaDeaux, 2007 WL 2163088, * 3; Solis, 356 B.R. at 410.
[11] See In re Joseph, C/A No. 06-50655, slip op., 2007 WL 950267 (Bankr. W.D. La. Mar. 20, 2007).

### C. Burden of Proof

Since this matter is before the Court for confirmation of Debtor's Plan, Debtor bears the burden of proving that her Plan complies with 11 U.S.C. § 1325(a) by a preponderance of the evidence. See In re Williams, C/A No. 97-08824-W, slip op. (Bankr. D.S.C. Jan. 13, 1998).

## IV. Application of the Totality of the Circumstances Test to Debtor's Case

### A. Debtor's Testimony

Debtor testified that she purchased the Pacifica for her mother's transportation. Although Debtor could transport her mother in the Sebring, the purchase of the Pacifica was necessary because it is large enough to transport the mother's wheelchair. Debtor further testified that she did not need the Pacifica for her use.

Considering this testimony and the fact that Debtor appeared to be the only licensed driver in her household at the time of purchase,[12] the Court cannot conclude that the Pacifica enhanced Debtor's ability to satisfy her personal wants and needs. The Pacifica appears to have been purchased to enable Debtor to transport her mother to doctor's appointments, a use personal to her mother but not necessarily to Debtor. See In re Grimme, C/A No. 07-10491, slip op., ___ B.R. ___, 2007 WL 2245802 (Bankr. S.D. Ohio Jul. 13, 2007) (finding that a vehicle was personal to a non-driving debtor since the vehicle was purchased to transport debtor to doctor's appointments). Unlike Debtor's purchase of the Sebring, Debtor's mother is both a party to the Pacifica Note and a joint owner of the Pacifica. This fact, coupled with Debtor's access to another vehicle for her personal use, strongly supports Debtor's testimony that the Pacifica was not purchased for Debtor's personal use and indicates that Debtor's mother intended to acquire the vehicle for her use.

### B. Debtor's Actual Use of the Pacifica

---

[12] It appears that Debtor's mother, the other party to the Pacifica Note, was unable to drive at the time of purchase. The Court takes judicial notice that Debtor's dependants were not eligible to drive at the time the Pacifica was purchased based upon their ages disclosed on Schedule I. It also appears from Debtor's testimony that Debtor was not married at the time the Pacifica was purchased.

11

A debtor's actual use of the vehicle is often a reflection of the intended use of the vehicle. See Solis, 356 B.R. at 409. Such use also provides a method for the Court to judge the credibility of testimony about intended use of a vehicle. See id. "Significant and material" personal use often leads to the conclusion that the vehicle was in fact acquired for personal use. See id. at 409; Phillips, 362 B.R. at 305. However, a debtor need not use or have intended to use a vehicle "solely" or "primarily" for non-personal use in order for the vehicle to be considered as having been acquired for non-personal use. See In re Adaway, C/A No. 06-10273, ___ B.R. ___, 2007 WL 1174882 (Bankr. E.D. Tex Apr. 10, 2007) (holding *de minimus* personal use will not nullify a debtor's subjective intent that the vehicle was not acquired for personal use).

Under the facts of this case, the Court cannot find any personal use by Debtor was significant and material considering that Debtor had another new vehicle of equal age at her disposal for her personal use and Debtor's credible testimony that the Pacifica was not purchased for her personal use. See LaDeaux, 2007 WL 2163088, * 1 (finding that debtors did not intend to acquire the subject vehicle for personal use in a case where debtors had one vehicle for personal use and another for business use).

### C.     Designation in the Pacifica Note

Finally, the designation of personal use in a retail installment contract can be persuasive evidence of a debtor's actual intent of purchasing a vehicle for personal use. See Joseph, 2007 WL 950267, * 3, In re Jackson, 338 B.R. 923 (Bankr. M.D. Ga. 2006). In this case, the Pacifica Note indicates that the vehicle was acquired "primarily for the following purpose: personal, family or household."

Some courts have found that the reference to "personal" in 11 U.S.C. § 1325(a)(*) is different than the Bankruptcy Code's reference to "personal, family, or household" contained in

other sections of the Code such as 11 U.S.C. §§ 101(8), 365(d)(5), 506(a)(2), 507(a)(7), and 722.[13] On this issue, this Court is guided by the Fourth Circuit's Runski case. See Cypher Chiropractic Center v. Runski (In re Runski), 102 F.3d 744, 747 (4th Cir. 1996). In Runski, the Court, construing 11 U.S.C. § 722, concluded that "personal," "family," and "household" described three different categories of goods. See id. Though these categories are different, the Circuit Court concluded that "categories undoubtedly overlap to some extent...." See id. Thus, under Fourth Circuit law, "personal use" is neither mutually exclusive nor wholly synonymous with "family" or "household" use.

In this case, the Court does not believe that the designation of "personal, family, or household" use in the Pacifica Note should be controlling. Debtor and her mother are both parties to the Pacifica Note. The designated use in the Pacifica Note could correctly describe the mother's use but not Debtor's use. Likewise, the use of Pacifica could be correctly designated as to Debtor as to "family" and "household" but still not be considered "personal." See In re Smith, C/A No. 07-30201, slip op., 2007 WL 1577668, *5 (Bankr. S.D. Tex. May 29, 2007) (finding a statement in a contract that a vehicle was acquired for personal, family, or household use should not be construed against the debtor since this contractual phrase is disjunctive and the testimony established that the vehicle was acquired for family use). These ambiguities in the Pacifica Note should not be construed against Debtor and therefore Court will not weigh this designation in the Pacifica Note against Debtor. See LaDeaux, 2007 WL 2163088, * 4.

---

[13] See Jackson, 338 B.R. at 926 (finding that Congress intended "personal" to stand alone in 11 U.S.C. § 1325 and have a different meaning than family or household); In re Press, C/A No. 06-10978, slip op., 2006 WL 2734335, * 2 (Bankr. S.D. Fla. Jul. 26, 2006) (same). Under this interpretation, these courts have found that 11 U.S.C. § 1325(a)(*) does not prevent the bifurcation of the debt for a vehicle acquired for family or household use. See Jackson, 338 B.R. at 926. Other courts have disagreed with the interpretation in Jackson and found that "personal," "family," and "household" are not mutually exclusive. See Phillips, 362 B.R. at 303-304; Adaway, 2007 WL 1174882, * 2.

### D.    Debtor's Pacifica Was Not Acquired for Debtor's Personal Use

The Court finds Debtor credible and her testimony persuasive on her lack of intent on purchasing the Pacifica for her personal use. This testimony is substantiated by her actual use of the vehicle for transporting her mother to appointments, the fact that Debtor has another vehicle at her disposal to meet her personal needs, the lack of personal benefit to Debtor in acquiring the Pacifica, and the fact that her mother, the true beneficiary of the Pacifica, is a party to the Pacifica Note. Weighing the foregoing, the Court concludes that the Pacifica was not acquired for Debtor's personal use and therefore the Pacifica is not subject to the protections of 11 U.S.C. § 1325(a)(*).

### CONCLUSION

Based upon the foregoing, the Credit Union's objection to confirmation of Debtor's Plan is sustained in part. The Credit Union's security interest in the Sebring fits within the protection of 11 U.S.C. § 1325(a)(*) and therefore may not be valued. However, the Credit Union's security interest in the Pacifica, though purchase money, does not fit within the protection of 11 U.S.C. § 1325(a)(*) since the Pacifica was not acquired for the personal use of Debtor. To the extent necessary to comply with this Order, Debtor shall propose an amended chapter 13 plan within seven (7) days of the entry of this Order. The Court shall hold a hearing on Debtor's motion to value the Pacifica on September 6, 2007 at 9:00 a.m. at the United States Bankruptcy Court, 145 King Street, Room 225, Charleston, South Carolina.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
August 28, 2007